Mario Alberto Tamez v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.   2-03-189-CR

2-03-190-CR

2-03-191-CR

MARIO ALBERTO TAMEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Mario Alberto Tamez appeals his conviction for aggravated assault with a deadly weapon.  A jury found Tamez guilty and assessed his punishment at two years’ confinement.  In a single point, Tamez challenges the factual sufficiency of the evidence to support his conviction.

II.  Background Facts

On the night of January 5, 2002, Tamez, his sister, and some friends went to a pool hall called Mi Tierra in Arlington.  The owner of the pool hall, Esther Gaona, knew Tamez by his nickname “Green Eyes.”  During the evening, a fight started, and Gaona saw Tamez running with a pool ball in his hands.  She thought he was going to throw it at the back of a customer’s head, so she screamed in Spanish, “Ojos Verdes, no.”  Tamez heard the scream, turned around, met Gaona’s eyes, and threw the pool ball at her.  Gaona thought the ball was coming towards her face and tried to catch it in her hand, but it slipped through her fingers and hit her in the chin, cutting her and requiring five or six stitches.  While Gaona was grabbing her face, Tamez threw a second ball, hitting Gaona in the shoulder.

A few days later, Gaona met with a detective and identified Tamez in a photo spread as the man who threw the pool ball at her.  When Gaona recognized Tamez in the photograph, she became scared, very nervous, and started to shake.  The detective exhibiting the photo spread to Gaona confirmed that Gaona was calm until she was shown the pictures.  Although the pool hall was crowded on the evening of the offense, the detective testified that no one has ever come forward to indicate that someone other than Tamez was the person who hurled the pool ball at Gaona’s head.

The defense contradicted the above evidence.  Tamez walked in front of the jury to show them that his eyes are not green.  Several witnesses testified that Tamez did not throw the pool ball.  Manual Mendoza, Tamez’s friend, testified that a fight broke out; Tamez was struck with a pool ball and ran outside; he then saw German Carreon
(footnote: 2) throw a pool ball at Gaona.  Mendoza further testified that Tamez did not throw any pool balls and that he went to the hospital with Tamez, who received stitches.  Matilda Gaddy, assistant director of medical records for Medical Center of Arlington, delivered medical records, which were introduced into evidence, showing Tamez was admitted shortly after midnight on January 6, 2002, for a laceration to his right eyebrow caused by a “pool ball (thrown).” 

Eric Torez (a/k/a Pedro Pineda), another friend of Tamez’s, testified that he did not see Tamez get hit by the ball, but he saw Tamez leave the bar.  He further testified that he did not see Tamez throw any pool balls.

Paula Tamez, Tamez’s sister, testified that when the fight broke out at the pool hall, she saw her brother get hit in the eye with a pool ball.  She said he took off his shirt to cover his eye and then started walking outside.  Next, she saw a beer bottle fly by German’s head, and then German threw a pool ball that hit Gaona.  She said that her brother did not take any pool balls with him outside the building and that he dropped her off at home before he went to the hospital.  She agreed that her brother is nowhere near the same size and shape as German
(footnote: 3) and that it would be pretty hard to mistake her brother for German. Additionally, she admitted that she has bad vision and that she never went to the police with her brother’s innocence.

Michael Garcia, another friend of Tamez, testified that the only two things he remembers from the night in question are (1) Tamez getting hit and (2) running outside because there was too much going on in the pool hall. However, prior to that statement he testified that Tamez did not ever throw a pool ball.  He further admitted that he never called the police or the District Attorney to tell them what he knew.

JoAnn Rebolloso, who worked at the pool hall and whose sister has had children with Tamez, testified that she was not at the pool hall on the night in question.  She saw Tamez after his eyebrow had been cut because he came to her house to get his insurance card before he went to the hospital.  She testified that she went to the pool hall on Sunday and Monday after the incident happened on Saturday night and that Gaona described her attacker as chunky, light-skinned, and bald.  She further testified that when she showed Gaona a picture of Tamez, Gaona told her that she did not get a good look at her attacker and that she just heard somebody say “no, Green Eyes.”  Gaona testified that she did not speak to Rebolloso about the attack because she did not want to ruin their friendship.

III.  Standard of Review

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the
 verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis
, 922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

IV.  Factually Sufficient Evidence of Identity

In his sole point of error, Tamez challenges the factual sufficiency of the evidence supporting his conviction for aggravated assault with a deadly weapon.  Specifically, Tamez argues that the evidence is factually insufficient to prove that he is the person who threw the pool ball at Gaona.  Tamez emphasizes the conflicts in the record, including Gaona’s testimony that is “totally at odds with the testimony of JoAnn Reboslloso [sic].”

Evidence that supports Tamez’s assertion that the evidence is factually insufficient includes: Manual Mendoza and Paula Tamez identified German as Gaona’s attacker; Mendoza, Torez, and Garcia testified that Tamez did not throw any pool balls; and Rebolloso conflicted Gaona’s testimony of Tamez’s identity.

Having examined the evidence in a neutral light, including the evidence relevant and supportive of Tamez’s argument on appeal, we conclude that the proof of Tamez’s guilt is not so weak as to undermine confidence in the jury’s verdict.  Nor is the evidence of Tamez’s guilt outweighed by contrary proof. Although Tamez called five witnesses to testify and all testified of his innocence, each of the witnesses was either a friend or a relative. Consequently, the jury may have viewed the witnesses as biased.  Additionally, none of these witnesses relayed their claims regarding Tamez’s innocence to authorities prior to trial.  The jury also had the opportunity to view Tamez’s eyes and still believed that he was Gaona’s attacker in this case based on Gaona’s testimony.  The jury’s response to this evidence is proper under 
Goodman v. State
:

For example, suppose a modern-day Cretan Liar testifies:  “I saw the defendant put the baggie of cocaine down on the sidewalk.”  Although the Cretan Liar has five prior perjury convictions, his testimony . . . standing alone, is also factually sufficient to support the element of possession.  If the jury believes him (and it is entitled to do so under either a legal or factual sufficiency review), then the Cretan Liar’s testimony conclusively proves the point.

66 S.W.3d 283, 285-86 (Tex. Crim. App. 2001).  Thus, the jury was entitled to believe Gaona’s testimony regarding the identification of her attacker.  We hold that Tamez’s conviction for aggravated assault with a deadly weapon is supported by factually sufficient evidence.
(footnote: 4)  We overrule Tamez’s sole point of error.

V.  Conclusion

Having overruled Tamez’s sole point of error regarding only his conviction for aggravated assault with a deadly weapon, we affirm the trial court’s judgments as to all three cases.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: 
January 29, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The defense attempted to call German Carreon as a witness, but he invoked his Fifth Amendment right while on the stand.

3:
Paula described German as fat, bald, dark, and weighing 200-230 pounds.

4:
This holding is not contradictory to our holding in 
Logan v. State
, which Tamez requests that we rely upon.  Nos. 2-02-191-CR, 2-02-192-CR, 2-02-193-CR, 2-02-194-CR, 2003 WL 22253894 (Tex. App.—Fort Worth Oct. 2, 2003, no pet.) (memorandum opinion, not designated for publication).  In 
Logan
, we stated that the 

shaky identification of Appellant as the boat operator after seeing a mostly obscured face from fifty to sixty feet away for an instant in bright sunlight does not mesh with his inability to determine whether a helmeted individual in a picture in his hand, viewed at his leisure in court, was also Appellant.  The State’s weak evidence, coupled with the defense witnesses’ contradictory testimony, undermines confidence in the verdict.

Nos. 2-02-191-CR, 2-02-192-CR, 2-02-193-CR, 2-02-194-CR, 2003 WL 22253894, at *3.  Here, Gaona had no trouble identifying Tamez in the photo spread.  Therefore, her testimony alone sufficiently proves the identity of her attacker as Tamez.